IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CAROLYN A. JONES,            )
                             )
            Plaintiff,       )
                             )
v.                           )   Case No. CIV-10-003-KEW
                             )
MICHAEL J. ASTRUE,           )
Commissioner of Social       )
Security Administration,     )
                             )
            Defendant.       )

## OPINION AND ORDER

Plaintiff Carolyn A. Jones (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on February 2, 1956 and was 52 years old at the time of the ALJ's latest decision. Claimant completed her high school education. Claimant worked in the past as cook, home health care provider, waitress, cashier, janitor, and seamstress.

Claimant alleges an inability to work beginning January 6, 1998, due to carpal tunnel syndrome, tendinitis, cubital canal syndrome, ganglion cysts, hypertension, thyroid disease, and depression.

**Procedural History**

The procedural history of Claimant's quest to obtain benefits is somewhat long and tortured. On April 1, 1999, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On July 14, 2000, ALJ Larry Weber issued an unfavorable decision. The decision was reversed and the case was remanded by this Court on September 19, 2003. The Appeals Council vacated the prior decision and remanded the case to an ALJ for further action.

A supplemental hearing was conducted by ALJ Weber on June 2, 2004. On September 17, 2004, the ALJ issued a second unfavorable decision. The decision was reversed and the case was remanded by this Court on October 11, 2007. The Appeals Council vacated the prior decision and remanded the case to an ALJ.

A supplemental hearing was scheduled before ALJ Michael Kirkpatrick on July 23, 2008 but was conducted by ALJ Lantz

McClain. By decision dated September 15, 2008, the ALJ found that Claimant was disabled beginning on February 2, 2006 but was not disabled prior to that date. The ALJ determined Claimant was not disabled at any time through December 31, 2002, Claimant's date of last insurance.

On November 13, 2009, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that Claimant suffered from severe impairments and was disabled beginning February 2, 2006. Prior to that time, the ALJ found Claimant did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of sedentary work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in failing to: (1) base his decision upon substantial evidence; (2) properly consider the opinions of Claimant's treating physician such that Claimant's RFC is improper; (3) pose appropriate hypothetical questions to the vocational expert which encompassed all of Claimant's impairments;

(4) properly apply the grids; and (5) engage in a proper credibility determination. Claimant also contends the Appeals Council erred in accepting the ALJ's determination that he did not have an impairment that significantly limited his ability to perform basic work-related activities.

### Substantial Evidence Supporting Decision

Claimant first contends the ALJ failed to follow the directives provided by this Court in the last reversal and remand order. The prior decision was primarily remanded for the ALJ to reassess Claimant's credibility since factual support existed in the record for some of her claimed limitations. (Tr. 611-20). Since these same issues are raised elsewhere in Claimant's issues of error, the propriety of the ALJ's decision will be examined under each specific issue rather than in a wholesale fashion.

### Treating Physician's Opinion and Questioning of the Vocational Expert

As presented by Claimant, these two arguments are inextricably intertwined and will, therefore, be addressed together. Claimant underwent carpal tunnel release surgery on her right hand in March of 1998, together with removal of a ganglion cyst, and release surgery on her left hand in April of 1998. Further surgery was performed on Claimant's left wrist and arm in order to try to repair some nerve damage in May of 1998. (Tr. 438).

On October 12, 1999, Claimant was attended by Dr. Robert Buchanan. Dr. Buchanan found Claimant experienced diminished light touch sensation on the left hand in the distribution of the median nerve mostly involving the index and long fingers. She was found to have well developed thenar musculature in both hands and the interosseous muscles were strong bilaterally against resistance.

Dr. Buchanan found Claimant had full range of motion of all digits, the thumb, and the wrist with full flexion/extension in both hands. Tinel's sign was positive on the left with pain radiating into the thumb, index, and long fingers. She had a Phalen's sign on the left side with tenderness and discomfort in the thumb, index, and long finger. Claimant had some mild to moderate tenderness of the muscle belly of the left mid forearm on the volar aspect at the musculo-tendon junction. Dr. Buchanan concluded Claimant had continued median nerve irritation following bilateral carpal tunnel releases.

Dr. Buchanan released Claimant with the restrictions of no motion over 30 times an hour with either wrist or elbow and no flexion of either elbow over 70 degrees. He noted Claimant still had left hand post-operative weakness. (Tr. 298-99).

The ALJ determined Claimant suffered from the severe impairments of status post sesamoid bone removal in the right foot, status post bilateral carpal tunnel release, status post suture of

7

the left median nerve at the wrist, bilateral carpal tunnel syndrome, and status post decompression of the right ulnar nerve. (Tr. 594). He ultimately found Claimant retained the RFC to perform sedentary work except that she cannot perform work that requires constant use of the hands for repetitive tasks such as keyboarding. (Tr. 595).

Much of Claimant's argument requires a good deal of interpretation and translation in order to turn Dr. Buchanan's restriction on repetitive motion to 30 times in an hour into an argument that this necessarily places a reduction of use and range of motion to 50% of normal. *See*, Claimant's Brief at p. 15, 20. This assertion has no foundation in the evidentiary record. Rather, it is a matter of Claimant's counsel's creation.

This Court is troubled by two omissions from the ALJ's analysis. While the ALJ references Dr. Buchanan's restriction on flexion of Claimant's elbow to no more than 70 degrees, the limitation does not appear in the ALJ's RFC determination or questioning of the vocational expert. To the extent the ALJ rejected Dr. Buchanan's opinion establishing this restriction, he was required to provide the basis for the rejection of the treating physician's opinion and provide an explanation of the weight he afforded the opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01

(10th Cir. 2003). The ALJ did neither in this case.

If the ALJ did not reject Dr. Buchanan's opinion, he should have included the restriction in his hypothetical questioning of the vocational expert. A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ is required to accept and include in the hypothetical question only those limitations supported by the record. Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999). However, "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision.'" Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991) quoting Ekeland v. Bowen, 899 F.2d 719, 724 (8th Cir. 1990). Since the ALJ's hypothetical questioning was non-inclusive of all of Claimant's limitations, the testimony cannot be used to support the ALJ's RFC finding at step five.

The second area of concern is the translation by the ALJ of the restriction on motion established by Dr. Buchanan into a finding in the RFC and questioning of the vocational expert that Claimant cannot perform "constant" motion but can perform "frequent" motion. The *Selected Characteristics of Occupations*,

9

which is a companion to the *Dictionary of Occupational Titles*, provides that an activity is considered "constant" when it exists two-thirds or more of the time, an activity that is considered "frequent" when it exists from one-third to two-thirds of the time, and an activity is considered "occasional" when it exists up to one-third of the time. *See*, <u>Carson v. Barnhart</u>, 140 Fed. Appx. 29, 37 (10th Cir. 2005). In his examination of the vocational expert, the ALJ apparently determined that the restriction on Claimant's motion to 30 times per hour permitted "frequent" movement rather than "constant" or "occasional" movement. (Tr. 807-08). No basis in the medical record is provided for this finding and, ultimately, Claimant's RFC. As stated, the questioning did not include the restriction on flexion and its effect upon motion. On remand, the ALJ shall include all of Claimant's medically established limitations in both his RFC assessment and the questioning of the vocational expert.

**Application of the Grids**

Claimant next contends the ALJ improperly applied the Grids in finding that "using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled'" for the period prior to February 2, 2006. (Tr. 598). The use of the grids is not appropriate unless the ALJ finds "(1) that the claimant has

no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level." Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993). Furthermore, "the mere presence of a nonexertional impairment does not automatically preclude reliance on the grids." Channel v. Heckler, 747 F.2d 577 at 582 n.6 (10th Cir. 1984). The presence of nonexertional impairments precludes reliance on the grids only to the extent that such impairments limit the range of jobs available to the claimant. Id.

Among the nonexertional limitations contemplated by the regulations are those which impose difficulty in "performing the manipulative or postural functions of some work such as reaching, handling . . . ." 20 C.F.R. § 404.1569a. Based upon the limitations determined by Dr. Buchanan, Claimant has nonexertional limitations in reaching based upon the restrictions in flexion at the elbow and handling in repetitive motion. As stated, the ALJ failed to consider the flexion limitation in his decision. It is an entirely rational conclusion that the flexion limitation will limit the range of jobs available to Claimant. The application of the Grids in this circumstance was not appropriate.

**Appeals Council Decision**

Claimant also asserts the Appeals Council erred in accepting the ALJ's RFC determination. This Court is not certain of the reason for Claimant's assertion of this matter as a separate issue. Nonetheless, since the ALJ's RFC failed to take into consideration all of Claimant's impairments, the Appeals Council's acceptance of that RFC was equally erroneous.

### Credibility Determination

Claimant contends the ALJ improperly found Claimant credible before her 50th birthday but not credible in her testimony before her 50th birthday. This Court does not read the ALJ's opinion as making this finding. It appears the ALJ found Claimant was not entirely credible in all of her testimony regardless of age. Claimant makes no other argument in relation to the ALJ's credibility determination. On remand, however, the ALJ shall reevaluate his findings on credibility should it be warranted based upon consideration of all of her limitations as found by her treating physician.

### Awarding of Benefits

Claimant specifically requests that this Court award benefits rather than remand the case for further consideration. Claimant filed for benefits in 1999. This case has been excruciatingly protracted. Defendant should be permitted an opportunity to

reassess the date of disability and make appropriate findings for review. The pressing demand for timely adjudication, however, requires only this final opportunity.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

DATED this 29th day of March, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE